UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

IN RE APPLICATION OF PHILIPPE MARTINEZ, et al.,

                Applicants,

For an Order Pursuant to 28 U.S.C. § 1782 to
Conduct Discovery for Use in Foreign Proceedings.
-----------------------------------------------------------------------X

24-MC-00306 (RA)(SN)

**REPORT AND RECCOMENDATION**

**SARAH NETBURN, United States Magistrate Judge**.

**TO THE HONORABLE RONNIE ABRAMS:**

      Petitioner Philippe Martinez and MSR Media SKN Ltd. ("Applicants") filed an *ex parte* application to obtain discovery from Standard Chartered Bank, New York Branch ("Standard Chartered Bank") and The Bank of New York Mellon (collectively, "Respondents") for use in proceedings in the Federation of Saint Christopher and Nevis ("St. Kitts and Nevis"), pursuant to 28 U.S.C. § 1782. ECF No. 1. I recommend that the Court GRANT the application with the modifications set forth in this Report and Recommendation.

## BACKGROUND

### I. Factual Background

      Philippe Martinez is a film producer and founder of MSR Media SKN Ltd., a company that produces films and movies in St. Kitts and Nevis. The Applicants were involved in St. Kitts and Nevis's Citizenship by Investment ("CBI") program, which provides citizenship to eligible individuals who invest in the country. In exchange for their investments in the local film industry, the Applicants received CBI units, which can be sold based on legally mandated minimum prices. On November 17, 2023, the Applicants wrote a letter accusing Caribbean

Galaxy Real Estate Corporation, Galaxy Group, and Ying Jin (the "Caribbean Galaxy Parties") of conspiring with Timothy Harris (the "Intervenor" or "Harris"), the former prime minister of St. Kitts and Nevis, to manipulate the CBI program to defraud the people of St. Kitts and Nevis. The Applicants alleged that Intervenor granted a high number of CBI units to Caribbean Galaxy Parties in exchange for their commitment to build a public incarceration facility in St. Kitts and Nevis (the "Jail Project"). The Applicants asserted in their letter that Caribbean Galaxy Parties sold their CBI units at prices lower than the legally mandated price and, in effect, undercut their competitors, all with the cooperation of the St. Kitts and Nevis government.

In response to this letter, two of the Caribbean Galaxy Parties and Intervenor sued the Applicants for defamation in the High Court of Justice in St. Kitts and Nevis (the "Foreign Proceedings"). Five months later, the Applicants sued Caribbean Galaxy Parties, Harris, and other defendants in the Middle District of Florida alleging causes of action under the Racketeering Influenced and Corrupt Organizations Act (the "Florida RICO Action").

On July 9, 2024, the Applicants filed this motion to conduct discovery for use in foreign proceedings, pursuant to 28 U.S.C § 1782. The Applicants seek to subpoena Standard Chartered Bank and Bank of New York Mellon for financial documents involving the Caribbean Galaxy Parties, Harris, and other individuals. The Applicants allege that these documents would support their justification defense in the ongoing defamation proceedings in St. Kitts and Nevis.

## DISCUSSION

### II.     Legal Standard

"A district court has authority to grant a § 1782 application where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or

international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015) (internal quotations and alterations omitted). Once these three statutory requirements are met, "a district court is free to grant discovery in its discretion." In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery, 121 F.3d 77, 78 (2d Cir. 1997). Courts routinely grant such petitions *ex parte*. Gushlak v. Gushlak, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").

After determining that an applicant has met the statutory requirements, the court may exercise its discretion and consider the four factors articulated by the Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004): "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome." In re Catalyst Managerial Servs., DMCC, 680 F. App'x 37, 38-39 (2d Cir. 2017) (quoting Intel Corp., 542 U.S. at 264-65) (internal quotation marks omitted).

### III. Application

First, the Court must consider the three statutory requirements of 28 U.S.C. § 1782. I recommend that the Court find that the Applicants have met all three requirements.

### A. Statutory Requirements

#### 1. The Respondent Banks Reside or Are Found in this District

First, the Applicants have established that all Respondents reside or are found in this district. The Court of Appeals has interpreted this element as requiring nothing more than a basis for exercising personal jurisdiction over the Respondents. See In re del Valle Ruiz, 939 F.3d 520, 528 (2d Cir. 2019) ("§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."). It is "enough for purposes of due process" that the non-party from whom discovery is sought has minimum contacts in the forum and those contacts "go to the actual discovery sought." Id. at 530. That is, "where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery." Id.

The Court's exercise of personal jurisdiction over Standard Chartered Bank and Bank of New York Mellon comports with due process. Both banks have branches in New York, and the discovery sought arises directly from the banks' contacts with this forum. Caribbean Galaxy Parties do not dispute that this first requirement of § 1782 is satisfied. Intervenor does not challenge the Court's jurisdiction over Bank of New York Mellon, but Intervenor contends that Standard Chartered Bank is not found in this district. Intervenor argues at length that the Court cannot exercise *general* personal jurisdiction over Standard Chartered Bank but insufficiently argues that the Court cannot not exercise *specific* personal jurisdiction.

Applying the standard set out in In re del Valle Ruiz, the Applicants have established that the discovery material sought "proximately resulted from the respondent's forum contacts." In re del Valle Ruiz, 939 F.3d at 530. Standard Chartered Bank has a branch in this district, and the subpoena seeks discovery from that branch. The material sought consists of transactions where

4

the New York branch was the sending, ordering, beneficiary, or intermediary bank—all of which is material that proximately results from Standard Chartered Bank, New York Branch's contacts with this district. Intervenor suggests that, because the Applicants have not identified specific bank accounts or specific transactions involving the subpoenaed banks, there is insufficient evidence to exercise personal jurisdiction. But the Applicants need not provide such detail. "The fact that Applicants cannot point to specific intermediary transactions is not cause for rejecting jurisdiction in this case; in fact, it is the very reason that Applicants are seeking to subpoena the entities." In re Abraaj Inv. Mgmt. Ltd., No. 20-mc-229 (VSB), 2023 WL 2674752, at *5 (S.D.N.Y. Mar. 29, 2023). It is sufficient that the Applicants seek records of activity that proximately resulted from Standard Chartered Bank's contacts in this forum and that the Applicants seek this information from a bank that regularly transacts business in the Southern District and maintains a branch in the district. Therefore, the Court may exercise personal jurisdiction over the bank.

Indeed, the Southern District of New York courts have previously found that Standard Chartered Bank is found in or resides in this district. See, e.g., Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd., 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("There is no dispute that the first [§ 1782] requirement[] [is] met. All of the respondents have offices and do business in Manhattan and thus 'reside' in the Southern District of New York."); In re Abraaj, 2023 WL 2674752 at *4-5. The cases Intervenor cites for the proposition that district courts have previously declined to extend jurisdiction over Standard Chartered Bank analyze *general* personal jurisdiction and arise in different contexts, not § 1782 applications. Under the requirements of § 1782, the Applicants have established that Standard Chartered Bank is found in or resides in this district.

5

## 2. The Discovery Is "For Use" in the Foreign Proceedings

Second, the Applicants have established that the discovery is "for use" in a foreign proceeding. To meet the requirement that the requested discovery is "for use" in a foreign proceeding, an applicant must show only that the discovery "will be employed with some advantage or serve some use in the proceeding." In re Accent Delight Int'l Ltd., 869 F.3d 121, 132 (2d Cir. 2017). The "for use" element requires merely a "*de minimis* showing that the information sought would be relevant to the foreign proceeding." In re Application of CBRE Global Investors (NL) B.V., No. 20-mc-315 (VEC), 2021 WL 2894721, at *7 (S.D.N.Y. July 9, 2021) (citation omitted) (internal quotation marks omitted).

The Applicants are defendants in a defamation proceeding in St. Kitts and Nevis. That litigation centers around the Applicants' statements in a November 17, 2023 letter that accused Caribbean Galaxy Parties and Intervenor of engaging in fraud, money laundering, tax evasion, and other forms of corruption. The Applicants intend to defend against the defamation claim by offering proof of the truth of their statements. The discovery they seek is squarely relevant and can be "employed with some advantage" to "serve some use" in the Foreign Proceedings because the Applicants seek bank records that may demonstrate that Intervenor and Caribbean Galaxy Parties were, in fact, engaged in this fraudulent scheme. In re Accent Delight, 869 F.3d at 132. The Applicants have also indicated that they expect to receive helpful discovery from these subpoenas based in part on the fact that their similar discovery application in the Southern District of Florida yielded responsive bank records that supported their defamation defense. See ECF No. 24, at 10. The Applicants have therefore met their *de minimis* burden; financial records from the Respondents that tend to support the truth of the Applicants' statements are undoubtedly "for use" in defending against the foreign defamation proceeding.

Caribbean Galaxy Parties further argue that the requested discovery could not possibly be "for use" in the St. Kitts and Nevis proceedings because the Applicants have no actual intention of using this material in the Foreign Proceedings. Rather, Caribbean Galaxy Parties contend that the Applicants are merely using these proceedings as a vehicle to obtain discovery for use in the Florida RICO Action. Evidence that is "plainly irrelevant" to a foreign proceeding cannot be considered "for use" in a foreign proceeding. See Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 120 n.7 (2d Cir. 2015). And when "most, if not all" of the information sought can be used *only* in a domestic proceeding rather than a foreign proceeding, the requested discovery also cannot be considered "for use" in a foreign proceeding. See Jiangsu S.S. Co., Ltd. v. Success Superior Ltd., No. 14-cv-9997 (CM), 2015 WL 3439220, at *5 (S.D.N.Y. Feb. 5, 2015). But the mere fact that the requested discovery is also relevant in the Florida RICO Action does not mean it cannot, at the same time, be for use in the foreign action. The two are not mutually exclusive.

An applicant may use § 1782 discovery in other proceedings, just as he or she could in domestic discovery. In re Accent Delight, 869 F.3d at 135 ("[S]hould a plaintiff 'obtain[] documents in discovery from a defendant in one case, nothing precludes her from using that evidence in a wholly separate lawsuit against the same defendant or a different party.'") (citing Glock v. Glock, Inc., 797 F.3d 1002, 1007 (11th Cir. 2015)). If the opponent credibly shows, however, that the applicant "'is attempting to use foreign litigation as a ruse for obtaining discovery' for use in other foreign proceedings," the court may enter a "protective order prohibiting use of the discovery in other proceedings" or "deny[] the Section 1782 application altogether." Id. (quoting Glock, 797 F.3d at 1009).[1] But "it is far preferable for a district court to

---

[1] Caribbean Galaxy Parties requested a protective order in their Opposition to the Application. This request is addressed below.

reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." Mees, 793 F.3d at 302 (quoting Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1101 (2d Cir. 1995)).

Just because information may be used in both a foreign proceeding and a domestic proceeding, an applicant does not act in bad faith by making a § 1782 discovery request. See In re Accent Delight, 869 F.3d at 135 ("Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise."). The Federal Rules of Civil Procedure do not set limits on what a party may do with lawfully obtained discovery after the fact. Id. It does not demonstrate bad faith to use information gained lawfully through the § 1782 process in other litigation. See In re Telegraph Media Grp. Ltd., No. 23-mc-215 (JGLC), 2023 WL 5770115, at *11 (S.D.N.Y. Sept. 6, 2023) ("That the English Court may permit public filing of documents obtained pursuant to this application, and that Zweig may thereafter be able to use such material in the D.C. Action, does not demonstrate bad faith by Telegraph."); id. ("Courts have found that ancillary benefits that may accrue to a Section 1782 petitioner do not weigh against a meritorious application."). As long as an applicant satisfies its burden of showing that the requested discovery is "for use" in a foreign proceeding, nothing in the statute requires that that be its only use. In re Al-Attabi, No. 21-mc-207 (VSB)(RWL), 2022 WL 229784, at *9 (S.D.N.Y. Jan. 26, 2022) ("[A] Section 1782 application should not be denied merely because the discovery material may have potential other uses by petitioner."); Ahmad Hamad Algosaibi & Bros. Co., 785 F. Supp. 2d at 439 ("Since the . . . documents AHAB is seeking are relevant to . . . and 'for use' in the foreign proceedings, the fact that AHAB may also be able to use the

discovery in future litigation against the respondents is immaterial."). Because the Applicants have shown that the information they seek is for use in the foreign defamation proceedings, the fact that the same evidence may be useful in the Florida RICO Action does not invalidate their application.

Furthermore, the cases that the Caribbean Galaxy Parties cite for the proposition that discovery sought for use in foreign proceedings may not also be for use in domestic proceedings concern situations where an applicant improperly seeks § 1782 discovery for use in a *prospective* lawsuit. See In re Postalis, No. 18-mc-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018). In Postalis, the applicant made public statements admitting that the purpose of the discovery was to "plead a new action" in the United States. Id. at *3. The applicant explicitly stated that only after receiving discovery did it "intend to file a lawsuit against the bank in the U.S. court system" in part because the applicant did not want to go into its future lawsuit "blind." Id. There, the court found that the requested discovery could not be "for use" in the foreign proceeding because the applicant's statement that the discovery was for use in filing a future lawsuit "belies its assertion that the requested discovery is for use in a foreign proceeding." Id. at *5. The court's discussion in Postalis centers around the applicant's misuse of § 1782 to gather evidence for a *future* lawsuit, not an already pending lawsuit. Similarly, in Jiangsu S.S. Co., Ltd., 2015 WL 3439220, at *1, the court denied the application for § 1782 discovery in part because the applicant sought information to bring future litigation. The court warned that district courts "must be particularly cautious to insure that §1782 is not being invoked as a subterfuge" to, for example, "intiat[e] pre-judgment attachment proceedings in the United States, rather than a foreign tribunal." Id. at *5.

These cases and others cited by Caribbean Galaxy Parties are inapposite. The Applicants here do not seek discovery for use in a *prospective* lawsuit. They seek discovery for use in a currently pending action in St. Kitts and Nevis initiated by two of the Caribbean Galaxy Parties and Intervenor. See Mees, 793 F.3d at 299 ("[W]here a foreign proceeding is *pending*, seeking discovery to prove one's claims satisfies the 'for use' requirement.") (emphasis added). The Applicants are not abusing the § 1782 process to gather pre-litigation discovery in the hopes of filing suit after the fact. The fact that the information can have dual purposes does not mean it cannot be considered "for use" in the Foreign Proceedings. Its use is clear: to defend against the defamation action that two Caribbean Galaxy Parties and Intervenor initiated.

Caribbean Galaxy Parties make much of Applicant Martinez's various statements in public interviews where he has discussed the Foreign Proceedings, the pending application, and the Florida RICO Action. But these statements do not demonstrate that the requested discovery is not "for use" in the Foreign Proceedings. At best, they suggest that the Applicants may use the requested discovery in both the Foreign Proceedings and the Florida RICO Action. The fact that evidence that is for use in the Foreign Proceedings could also be useful in the Florida RICO Action is unsurprising. After all, the letter the Applicants sent indicating that they would be filing the Florida RICO Action was the impetus for the foreign defamation proceeding. Overlap in subject matter and relevant evidence between the two is expected, and the law does not prohibit the Applicants from using evidence obtained in these proceedings in the Florida RICO Action, unless the Middle District of Florida orders otherwise.

### 3. The Application Is Made by an Interested Person

The Applicants have established that "the application is made by a foreign or international tribunal or any interested person." 28 U.S.C. § 1782(a). As defendants in the St.

Kitts and Nevis proceedings, the Applicants are undoubtedly interested persons. See Intel Corp., 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.").

Therefore, I recommend that the Court find that the Applicants have met all three statutory requirements of 28 U.S.C. § 1782.

### B. Discretionary Factors

If the three statutory requirements of § 1782 are met, a district court is free to exercise its discretion to grant discovery without further analysis. In re Metallgesellschaft, 121 F.3d at 78. That is, the Court need not even consider the Intel factors since the Applicants have established all three statutory requirements. Still, an application of the Intel factors to the facts of this case demonstrates the propriety of granting the application.

#### 1. Whether Respondent Banks Are Participants in the Underlying Proceeding

The first Intel factor asks whether the person or entity from whom discovery is sought is a participant in the foreign proceeding. If that entity is a nonparty, the need for § 1782 aid is greater because nonparticipants in foreign proceedings may be beyond the jurisdictional reach of the foreign tribunal. Intel Corp., 542 U.S. at 264.

Standard Chartered Bank and New York Bank of Mellon are not parties to the foreign litigation, and they have not participated in the foreign litigation. Yet Caribbean Galaxy Parties and Intervenor still contend that the first factor favors denying the application, arguing that the Applicants could have sought this information through the St. Kitts and Nevis courts, but failed to do so. This argument is misplaced and suggests a requirement that the statute does not contain. The law of this District is clear: there is no exhaustion requirement for seeking discovery through § 1782. See Mees, 793 F.3d at 303 ("We have rejected such a 'quasi-exhaustion'

11

requirement . . . .") (quoting In re Metallgesellschaft, 121 F.3d at 79). The Applicants were not required to seek this evidence through the Foreign Proceedings first.

But Caribbean Galaxy Parties and Intervenor are correct in contending that the first Intel factor weighs against granting an application when the applicant seeks discovery that is, "for all intents and purposes," from its opponent in foreign litigation. Frasers Grp. PLC v. Stanley, 95 F.4th 54, 58-59 (2d Cir. 2024). That is, § 1782 should not be used as a conduit to obtain information from a party that is, in essence, the applicant's adversary in the foreign proceeding. The Court of Appeals has directed district courts to focus on the "real party from whom documents are sought," rather than the nominal party to whom a subpoena is addressed. Kiobel by Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 245 (2d Cir. 2018). "[T]he relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application." In re Ex Parte Application of Porsche Automobil Holding SE, No. 15-mc-417 (LAK), 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016); see also In re Saul Klein, No. 23-mc-211 (PAE), 2023 WL 8827847, at *11 (S.D.N.Y. Dec. 21, 2023) (finding that the first Intel factor weighed against granting the application when the applicant subpoenaed only non-parties but, in substance, sought the bank records of the parties). Here, the Applicants seek, in part, the bank records of individuals and entities who are parties to the St. Kitts and Nevis litigation. Those records are essentially the documents of their adversaries in the Foreign Proceedings. The subpoenas also target individuals who are not parties to the foreign litigation. Those portions of the subpoenas cannot be said to be targeting, "for all intents and purposes," the Applicants' adversaries in the Foreign Proceedings. But to the extent the subpoenas seek the bank records of Caribbean Galaxy Real Estate Corporation, Ying Jin, and Intervenor, they essentially seek

discovery from their opponents in the St. Kitts and Nevis proceedings. Accordingly, the first factor weighs slightly against granting the application.

### 2. Whether the St. Kitts and Nevis High Court of Justice Would Be Receptive to U.S. Federal Assistance under 28 U.S.C. § 1782

The second factor examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel Corp., 542 U.S. at 264. The Court of Appeals has stated that district courts "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," including, for example, "a forum country's judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures." Euromepa S.A., 51 F.3d at 1099-1100.

Neither Caribbean Galaxy Parties nor Intervenor claim that the St. Kitts and Nevis High Court of Justice would be hostile to evidence obtained through the § 1782 discovery process. The Applicants have suggested that evidence obtained through this channel would likely be accepted by the High Court, in part because other courts in the Eastern Caribbean Supreme Court system have accepted judicial assistance from the United States. See ECF No. 1, at Ex. D. Therefore, the second Intel factor favors granting the application.

### 3. Whether the Request Is an Attempt to Circumvent Foreign Proof-Gathering Restrictions or Other Policies of St. Kitts and Nevis or the United States

The third Intel factor asks whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 265. Neither Caribbean Galaxy Parties nor Intervenor contested this third factor in their opening briefs. Caribbean Galaxy Parties only raised an argument regarding this factor in their Supplemental Memorandum of Law in Opposition to the Application. See ECF No. 36, at 9.

As an initial matter, the Court is not required to address arguments raised for the first time in a reply brief. See In re Postalis, 2018 WL 6725406, at *4 n.6; Patterson v. Balsamico, 440 F.3d 104, 113 n.5 (2d Cir. 2006). Regardless, Caribbean Galaxy Parties' argument on this factor is unconvincing. They contend that the Applicants seek to circumvent the Federal Rules of Civil Procedure by attempting to obtain discovery for the Florida RICO Action without first letting the RICO defendants test the sufficiency of the complaint via a motion to dismiss. But nothing in the Federal Rules of Civil Procedure would bar the Applicants from seeking discovery while a motion to dismiss is pending. The Applicants' request does not run afoul of either the Federal Rules of Civil Procedure or St. Kitts and Nevis law. Accordingly, the third Intel factor weighs in favor of granting the application.

### 4. Whether the Request Is Unduly Intrusive or Burdensome

"[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees, 793 F.3d at 302. "[W]hether a request is intrusive or burdensome should not be assessed based on the 'discovery scope' available in the foreign proceeding." Id. Rule 26(b)(1) provides that the scope of discovery is limited to "relevant" material that is "proportional to the needs of the case . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit," among other factors. The Rule also requires courts to limit discovery where "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other sources that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

14

Even where an application is overbroad, a district court may use its discretion to grant the application and limit the request. "[T]o the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery." Mees, 793 F.3d at 302. The Court of Appeals has generally encouraged district courts to take a permissive approach and "reconcile whatever misgivings [they] may have about the impact of [their] participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief." Euromepa S.A., 51 F.3d at 1101; see also Intel Corp., 542 U.S. at 265 ("[U]nduly intrusive or burdensome requests may be rejected or trimmed.").

Caribbean Galaxy Parties and Intervenor argue that the subpoenas are overbroad and unduly burdensome because they are temporally overbroad, they are overbroad as to subject matter, and they seek information from irrelevant parties.

The requests are not temporally overbroad. Caribbean Galaxy Parties state that the Jail Project is the purported basis for the discovery application, yet the discovery requests both pre-date and post-date the Caribbean Galaxy Parties' involvement in the Jail Project by years, so the requests are overbroad. But the basis of the application is not limited to only the Jail Project. The application seeks discovery for use in defending against the foreign defamation proceedings. Those proceedings center around Applicant Martinez's November 17, 2023 letter where he accuses Caribbean Galaxy Parties and Intervenor of fraud "during [Intervenor's] administration." ECF No. 1, at Ex. B. The letter alleges involvement in "a fraudulent network to sell shares of other projects at a fraction of their legal price, especially concerning the jail project" but does not limit its allegations to only the Jail Project. Id. Intervenor served as Prime Minister of St. Kitts and Nevis from 2015 to 2022, so requesting documents from 2018 to the present is not overbroad

15

and directly relates to the Applicants' defense in the Foreign Proceedings. The time period covered by the November 17, 2023 letter is broader than merely the time period during which Caribbean Galaxy Parties were involved in the Jail Project. Thus, the request is not temporally overbroad.

Aspects of the requests are overbroad as to subject matter. Caribbean Galaxy Parties argue that the subpoenas are overbroad because they seek all documents relating to financial records between the "Relevant Parties" regardless of whether the records relate to the Jail Project or not. Once again, the scope of the Foreign Proceedings extends beyond just the Jail Project. Evidence of a longer pattern of underselling CBI units before and after the Jail Project could be "employed with some advantage" by the Applicants in defending against defamation, so the evidence sought is proportional to the needs of the litigation. See In re Accent Delight, 869 F.3d at 132. But the requests are overbroad to the extent they seek documents that do not relate to the CBI program in general. As written, the subpoenas seek "all bank . . . records," between the relevant parties, even if unrelated to the CBI program. See ECF No. 1, Ex. B. The issue in the foreign litigation is whether the Applicants defamed Caribbean Galaxy Real Estate Corporation, Ying Jin, and Intervenor in the letter suggesting fraud in the CBI program. Any financial documents unrelated to the CBI program are too attenuated to be proportional to the needs of the foreign litigation.

The requests do sweep too broadly with respect to third-party transactions. The subpoenas request information from "Relevant Parties," and include in that definition Intervenor Harris, two of the three entities that comprise the Caribbean Galaxy Parties, and seven other individuals or entities alleged to be involved in the CBI scheme.[2] ECF No. 1, at Ex. B. The

---

[2] Galaxy Group is one of the parties opposing the application and therefore a member of the "Caribbean Galaxy Parties," but Galaxy Group is not a claimant in the St. Kitts and Nevis defamation proceedings.

16

claimants in the Foreign Proceedings are Caribbean Galaxy Real Estate Corporation, Ying Jin, and Intervenor. ECF No. 1, at Ex. C-1-C-2. While evidence of transactions between these claimants and the other seven individuals named in the subpoenas would undoubtedly be relevant in proving a conspiracy to defraud, documents between just the other seven individuals that do not include the claimants in the foreign litigation are a step too far. That is, documents showing transactions between, say, Faron Lawrence and CS Global Partners Limited may be helpful in the Foreign Proceedings, but because neither of those individuals are parties to the Foreign Proceedings and the subpoenas do not request records between those individuals related only to the CBI program, the request is too broad. To satisfy the proportionality inquiry, any documents sought from the Respondent banks must be limited to those relating to the CBI program, Caribbean Galaxy Real Estate Corporation, Ying Jin, and Intervenor. As the Court of Appeals has instructed, the Court should not deny the application even though part of the discovery request is overbroad and should instead cure the defect by narrowing the subpoenas. See Mees, 793 F.3d at 302. Thus, the fourth Intel factor partially weighs against granting discovery, but the defects can be cured by narrowing the subpoenas.

### C.  A Protective Order Is Not Proper

Finally, Caribbean Galaxy Parties request in a single footnote in their opposition brief that the Court enter a protective order barring the Applicants from using any discovery obtained through this application in any proceeding other than the St. Kitts and Nevis Proceedings. ECF No. 22, at 25 n.15. A protective order is not proper here. "If there is an identifiable and avoidable risk that evidence sought in a § 1782 application may be used for improper purposes, a district court may enter a protective order to limit its use." In re Telegraph Media, No. 23-mc-215 (JGLC), 2023 WL 5770115, at *11 (S.D.N.Y. Sept. 6, 2023). But as described above, the

Applicants have established that they seek the requested discovery for use in a foreign proceeding, and the mere fact that the evidence may also be useful in the Florida RICO Action does not constitute an "improper purpose[]." The Middle District of Florida is in the best position to determine whether or not to accept evidence obtained through this process, should the Applicants attempt to offer it in those proceedings. I recommend that the Court deny Caribbean Galaxy Parties' request for a protective order.

## CONCLUSION

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure and applying the discretion afforded to the Court by the statute, I recommend that the Court GRANT the application for an order pursuant to 28 U.S.C. § 1782 and narrow the subpoenas consistent with this Report and Recommendation.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   November 1, 2024
         New York, New York

\*          \*          \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable Ronnie Abrams if

required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Abrams. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).