**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of<br><br>*PHILIPPE MARTINEZ,*<br>*MSR MEDIA SKN LTD*<br><br>for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case No. 1:24-mc-00306-RA |

**THE CARIBBEAN GALAXY PARTIES' OBJECTION TO THE**
**<u>NOVEMBER 1, 2024, REPORT AND RECOMMENDATION (ECF NO. 39)</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND ...........................................................................................3

      A.     St. Kitts and Nevis' Citizen By Investment Program .................................3

      B.     St. Kitts and Nevis Proceedings.....................................................................3

      C.     Petitioners' Statements Concerning And Use of Relevant § 1782 Discovery .........................................................................................................3

      D.     Relevant Events In The RICO Action ...........................................................7

LEGAL STANDARD ......................................................................................................7

      A.     28 U.S.C. § 1782 ...........................................................................................7

      B.     The District Court Must Review the Magistrate Court's R&R De Novo................8

ARGUMENT ...................................................................................................................9

I.      Petitioners Cannot Establish That The Application Meets the Statutory Requirements ..................................................................................................9

II.     The Intel Factors Weigh Against Granting The Application...........................14

      A.     The First Intel Factor Weighs Against Granting the Application.........................15

      B.     The Second Intel Factor is Neutral ..............................................................16

      C.     The Third Intel Factor Weighs Against Granting The Application.....................17

      D.     The Fourth Intel Factor Weighs Heavily Against The Application.....................18

III.    In the Alternative, There is Good Cause To Enter a Protective Order Limiting Discovery "For Use" In the St. Kitts and Nevis Proceedings...........................22

CONCLUSION..............................................................................................................24

# TABLE OF AUTHORITIES

## <u>Cases</u>

*In re ALB-GOLD Teigwaren GmbH*,
   No. 19MC1166MKBST, 2019 WL 4140852 (E.D.N.Y. Aug. 30, 2019)...............................18

*In re Alghanim*,
   2022 WL 1423088 (S.D.N.Y. May 5, 2022) ........................................................................16

*Application of Royal Bank of Canada*,
   33 F.R.D. 296 (S.D.N.Y. 1963) ...........................................................................................17

*In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*,
   24-MC-119 (LJL), 2024 WL 4169550 (S.D.N.Y. Sept. 12, 2024)........................................14

*Correios v. Bank of N.Y. Mellon Corp.*,
   2023 WL 3166357 (2d Cir. Mar. 28, 2023)........................................................................1, 8

*In re DNG FZE*,
   No. 23 MISC. 435 (PAE), 2024 WL 124694 (S.D.N.Y. Jan. 11, 2024) ................................16

*Intel v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)........................................................................2, 8, 14, 15, 16, 17, 18

*Jiangsu S.S. Co., Ltd. v. Success Super. Ltd.*,
   No. 14 CIV. 9997 CM, 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015)..................................9, 12

*Kiobel v. Cravath, Swaine & Moore LLP*,
   895 F.3d 238 (2d Cir. 2018)...........................................................................................7, 8, 14

*In re Klein*,
   2023 WL 8827847 ......................................................................................15, 16, 19, 22

*Lippe v. Bairnco Corp.*,
   288 B.R. 678 (S.D.N.Y. 2003), aff'd, 99 F. App'x. 274 (2d Cir. 2004) ................................21

*Matter of Application for an Or. Seeking Discovery Under 28 U.S.C. § 1782*,
   No. 24 MISC. 152 (GHW) (GS), 2024 WL 2883293, at *8 (S.D.N.Y. May 16,
   2024). .........................................................................................................................18

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)........................................................................................18, 19

*In re Microsoft Corp.*,
   428 F. Supp. 2d at 194 ....................................................................................................15

*In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,
    2015 WL 5824505 (S.D.N.Y. Oct. 16, 2015) ..........................................................................20

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ...............................................................................................................9

*Participcoes Ltda. v. JPMorgan Chase & Co.*,
    2024 WL 3373416 (S.D.N.Y. July 10, 2024) .........................................................................8

*In re Postalis*,
    No. 18-MC-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018)
    ...................................................................................................................9, 10, 13, 18

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
    900 F.2d 522 (2d Cir. 1990)....................................................................................................8

*In re Yilport Holding A.S.*,
    No. CV 22-3028-ES-AME, 2023 WL 2140111 (D.N.J. Feb. 21, 2023) ...............................14

## Statutes

28 U.S.C. § 636(b)(1) ..........................................................................................................................1

28 U.S.C. § 1782....................................................1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 20

28 U.S.C. § 1782(a) ...............................................................................................................1, 7, 8, 15

RICO ............................................................................................1, 4, 5, 6, 7, 10, 11, 12, 13, 17, 20

## Other Authorities

Fed. R. Civ. P. 26.....................................................................................................................17, 18, 21

Fed. R. Civ. P. 26(a)(1)(B) ...............................................................................................................17

Fed. R. Civ. P. 26(b)(1).....................................................................................................................19

Fed. R. Civ. P. 26(d)(1).....................................................................................................................17

Fed. R. Civ. P. 26(f).........................................................................................................................17

Fed. R. Civ. P. 72(b) .......................................................................................................................1, 8

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), Caribbean Galaxy Real Estate Corporation, Galaxy Group, and Ying Jin (the "Caribbean Galaxy Parties"), by counsel, respectfully submit the following objections to the Magistrate Judge's November 1, 2024 Report and Recommendation ("R&R" (ECF No. 39)) which recommended that the Court grant Petitioners Philippe Martinez and MSR Media SKN Ltd ("Petitioners")' *Ex Parte* Application and Petition for an Order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in foreign proceedings("Application" (ECF No. 11)) as modified by the R&R.

## PRELIMINARY STATEMENT

Congress authorized district courts to provide judicial assistance under § 1782(a) ***only where*** the proposed discovery is "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).  Here, Petitioners made unequivocal statements to the media that their seeking of § 1782 discovery is not for use in a pending foreign proceeding, but is instead intended to identify U.S. dollar transactions that passed through intermediary banks—i.e., U.S. contacts— as part of an attempt to establish personal jurisdiction over the Caribbean Galaxy Parties, among others, in Petitioners' pending RICO Action filed in the Middle District of Florida.  In doing so, Petitioners are effectively requesting this Court to act beyond its authority by requiring production of documents for use in a U.S. proceeding, while simultaneously circumventing the Federal Rules of Civil Procedure that govern discovery in the RICO Action.

This Court should reject the Magistrate Court's R&R that recommended granting a modified Application and deny the Application in its entirety.  Because the Second Circuit treats a magistrate judge's resolution of a § 1782 application as a dispositive ruling, this Court must review this objection *de novo*. *Associacao dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, 2023 WL 3166357, *1 (2d Cir. Mar. 28, 2023).  Here, total denial of the Application is

appropriate because (1) the Application fails to meet the statutory requirements because Petitioners are not seeking the § 1782 discovery "for use" in the St. Kitts and Nevis Proceeding, and (2) three of the four factors cited in *Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), weigh against granting the Application, with the remaining factor having a neutral weight. As recognized by the Magistrate Court, the first *Intel* factor, which examines whether "the person from whom discovery is sought is a participant in the foreign proceeding," weighs against the Application because the discovery Petitioners are effectively seeking discovery from parties to the St. Kitts and Nevis Proceedings—therefore, through that proceeding, Petitioners have appropriate mechanisms to obtain the requested discovery. *Intel*, 542 U.S. at 264. Although the Magistrate Court improperly found that the second *Intel* factor, which considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," weighs in favor of the Application, courts in this Circuit have found that where a foreign court is receptive to § 1782 evidence, the second *Intel* factor is neutral. *Intel Corp.*, 542 U.S. at 264. The third *Intel* factor, which asks whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," weighs against the Application because the discovery sought would circumvent proof-gathering restrictions of the Federal Rules of Civil Procedure by providing early discovery in a pending case in the United States. *Intel*, 542 U.S. at 265. Finally, the fourth *Intel* factor, which looks to whether requests are "unduly intrusive or burdensome," weighs heavily against the Application because, even as modified, the requested subpoenas are not narrowly tailored to issues relevant in the St. Kitts and Nevis Proceedings. *Intel*, 542 U.S. at 265. Moreover, the fact that Petitioners have not identified concrete reasons to believe that Respondents would have relevant evidence is fatal to their request.

## FACTUAL BACKGROUND

### A.    St. Kitts and Nevis' Citizen By Investment Program

The St. Kitts and Nevis CBI Program offers citizenship to individuals in exchange for investment in the country.  The CBI Program was enacted to attract investors to contribute to the development of St. Kitts and Nevis by investing in, among other things, real estate or infrastructure projects.  In 2021, the CBI Program introduced a new path—the Alternative Investment Option ("AIO")—which allowed investors to invest in both privately-funded and privately-owned projects, as well as privately-funded and state-owned projects.  Because Caribbean Galaxy Real Estate Corporation was chosen as a private developer under the AIO program, it was entitled to receive citizenship shares, which it could  to sell to investors, who could then use them to obtain St. Kitts and Nevis passports through the AIO.  In 2021, the Government of St. Kitts and Nevis granted 5,500 CBI units to Caribbean Galaxy in exchange for Caribbean Galaxy's commitment to build a public incarceration facility ("Jail Project") in St. Kitts.

### B.    St. Kitts and Nevis Proceedings

In December 2023, Caribbean Galaxy Real Estate Corporation and its CEO, Ying Jin, filed a defamation claim in St. Kitts and Nevis (the "St. Kitts and Nevis Proceedings") against Petitioners after Petitioners made false statements about the Caribbean Galaxy Parties and purported wrongdoing related to the Jail Project.  ECF No. 12 ¶ 11, 14-15.

### C.    Petitioners' Statements Concerning And Use of Relevant § 1782 Discovery

On February 7, 2024, Petitioners filed an *ex parte* § 1782 Application for discovery in the Southern District of Florida, seeking discovery from Bank of America, N.A. and claiming that the discovery was "for use" in the St. Kitts and Nevis Proceedings.[1]  ECF No. 22 at 5.  The Florida

---

[1]  24-cv-20492-RKA.

Court granted the Application one day later. *Id.* Without seeking leave from the Florida Court, Petitioners used the order relating to their request for discovery from Bank of America, N.A. as a free license to serve unauthorized subpoenas on JP Morgan Chase, N.A., Wells Fargo Bank, N.A., The Bank of New York Mellon Corporation, The Bank of New York Mellon, BNY Mellon N.A., and Standard Chartered International USA, *id.*, which as discussed below, the Florida Court later *sua sponte* quashed. ECF No. 22 at 7.

On April 19, 2024, Mr. Martinez stated in a press interview that Caribbean Galaxy had made a "colossal mistake" by suing him for defamation in St. Kitts and Nevis because § 1782 "allowed me—my company—to go to court in the United States and get a court order allowing me to subpoena bank transactions of these people." ECF No. 22 at 3. Martinez then bragged:

> [W]e have started to receive some *financial transactions in U.S. dollar from the corresponding bank,* which prove what we have been saying all along. So we are very comfortable and *we cannot wait to continue to receive this information and to file our case in U.S. federal court next month*, and a lot of public servants are going to be worried.

*Id.* (emphasis added). That transactions were made in U.S. dollars is not relevant to any claims in the St. Kitts and Nevis Proceedings and instead relates only to Petitioners' attempts to establish personal jurisdiction over the Caribbean Galaxy Parties in the United States.

In the lawsuit Petitioners filed on May 23, 2024 in the Middle District of Florida, Petitioners accused the Caribbean Galaxy Parties, among others, of money laundering, wire fraud, and racketeering (the "RICO Action").[2] Unsurprisingly, the basis for Mr. Martinez's jurisdiction arguments were that the Caribbean Galaxy Parties were "[c]onducting business in the United States by executing corrupt CBI transactions in USD that *were transferred through a U.S. intermediary*

---

[2]  *MSR Media SKN Ltd. et al v. Khan et al*.; Dkt. No. 8:24-cv-01248-KKM-AAS (M.D. Fla.)

*bank*, including" the banks from which Petitioners were starting to receive discovery—i.e., "Bank of America in Miami, Wells Fargo in Miami, BNY Mellon in Miami, and JP Morgan Chase in Miami."  RICO Action, ECF No. 1 at ¶ 35 (emphasis added).

Shortly thereafter, on June 6, Mr. Martinez appeared in another interview, and expressed the surprising sentiment that being sued for defamation was "the best thing they have ever done to me."  He went on to say:

> my American lawyers—they are experts, they are top lawyers—they said, how could they make such a strategic mistake? So, we filed what is called a 1782 in the United States, and we were able to get bank transactions. Can you imagine? We have their bank transactions. Every single one of them. Do you realize how scared they are?

ECF No. 22 at 11–12.  Mr. Martinez attributed the Caribbean Galaxy Parties' purported fear to the allegations he has made concerning "money laundering to the U.S. banking system."  *Id*. at 12.

The day after this interview, on June 7, 2024, the Florida Court *sua sponte* vacated its order granting discovery from Bank of America, N.A., citing "concerns about the scope of discovery," and quashed all of Petitioners' subpoenas.  ECF No. 22 at 7.  On June 14, 2024, Petitioners then filed a renewed motion for § 1782 discovery (the "Renewed Application") before the Florida Court, seeking discovery from Bank of America, N.A., JP Morgan Chase, N.A., and Wells Fargo, N.A. *Id*.  Likely realizing that the Florida Court lacked jurisdiction over Standard Chartered Bank, New York Branch ("Standard Chartered Bank") and The Bank of New York Mellon (collectively, "Respondents")—banks they had previously served unauthorized subpoenas—Petitioners filed a § 1782 Application in this Court on July 3, 2024.  ECF No. 1.

On July 23, 2024, the Florida court authorized limited discovery as to certain of those banks but found that the Petitioners' requests were overbroad and significantly narrowed the approved subpoenas.  ECF No. 22 at 7.  In an August 1, 2024 interview, Mr. Martinez stated that the Florida

court's order was "[a] tremendous victory [because] MSR won in US court last week [t]he right to subpoena the bank transaction related to CBI of [] Galaxy. Harris, but *also a number of politicians and companies that we believe are part of the [] scheme*."  ECF No. 36 at 4 (emphasis added).  Mr. Martinez went on to say that although his prior application had been denied on a technicality, that that technicality was fixed and that the potential defendants can no longer "pretend that the *RICO case* was over" *id*. (emphasis added), thereby demonstrating his belief that the petition was related to the U.S. RICO litigation.  The DBS Interviewer asked Mr. Martinez about the protective order that Caribbean Galaxy Parties sought in the Florida § 1782 Action which would have prevented the use of any records obtained via the § 1782 proceeding for any purpose other than the foreign proceeding.  *Id*.  Mr. Martinez responded that the denial of that request was "a massive victory of MSR media" because he planned to use evidence he obtained to support his RICO Action:

> Of course it is. Because what they're worried about, right, is that when I access those records and, you know, we're going to access them, access them very soon, *they're worried that I'm going to put them in US federal court as evidence in the RICO case. And now we are giving a complete new dimension to the RICO case.*  So of course, it's a massive victory. The world needs to know what these people have done with the public patrimony of the CBI money[.]

ECF No. 36 at 5 (emphasis added).  The DBS Interviewer further asked Mr. Martinez how the RICO Action would be amended, considering new evidence he obtained from the Florida 1782 Request.  Mr. Martinez confirmed:

> [W]ith the bank subpoena because you see, Lisa, when you do a bank subpoena when we receive some authority, we were like, wow, what is that company in Switzerland sending and getting so much money? What is that company in Dubai?  You understand?  So we have to analyze, right*?  I can tell you that we're looking at probably eight new defendants. And this is for Saint Lucia.*  That's for Saint Lucia.   Yes. Eight. . . .  And in, Saint Kitts with the latest development we are talking with my lawyer about adding probably

> two individuals [to the RICO Action].  So, yes. So that's going to be announced at the end of August, right?  It's regrettable because we have given, as you know, Lisa, April 18th, I've invited these gentlemen to come to see the evidence. Well, the whole world now is going to look at the evidence in the RICO case at the end of August. . . .

In a follow up interview on August 21, 2024, Mr. Martinez confirmed that the amendment to the RICO Action would include more defendants concerning the St. Lucia allegations based on the evidence he obtained through the § 1782 applications.  ECF No. 36 at 5–6.

### D.    Relevant Events In The RICO Action

Since the filing of the complaint in the RICO Action, on November 1, 2024, the Caribbean Galaxy Parties, along with other defendants, have moved to dismiss the complaint on personal jurisdiction grounds.  RICO Action, ECF No. 117.  Petitioners have indicated that they intend to amend their complaint.  That amendment is due November 22, 2024, RICO Action, ECF No. 105, but Petitioners have made known that they intend to seek an extension.

## LEGAL STANDARD

### A.    28 U.S.C. § 1782

"Section 1782 contains three jurisdictional requirements: (1) the person from whom discovery is sought must reside or be found in the district where the application is made; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign tribunal or an interested person."  *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018).  Even if a district court finds that § 1782's jurisdictional requirements are satisfied, the court has discretion to deny an application in light of *Intel*'s non-exclusive discretionary factors, which are:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent;

7

(2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

(3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and

(4) whether the request is unduly intrusive or burdensome.

*Intel*, 542 U.S. at 264-65; *see Kiobel*, 895 F.3d at 244.

### B.    The District Court Must Review the Magistrate Court's R&R *De Novo*

A magistrate judge's resolution of a § 1782 application is a dispositive ruling subject to *de novo* review by a district judge under Federal Rule of Civil Procedure 72(b).  *See Associacao dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, 2023 WL 3166357, *1 (2d Cir. Mar. 28, 2023); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) ("Although a magistrate may hear dispositive pretrial motions, [the magistrate] may only submit proposed findings of fact and recommendations for disposition of the matter.").  Under Rule 72(b), if a party files objections to a magistrate judge's proposed findings and recommendations, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b).  Where, as here, an objection has been made, the Court must "arrive at its own, independent conclusion about those portions of the magistrate's report to which objection is made."  *Aguila Energia e Participcoes Ltda. v. JPMorgan Chase & Co.*, 2024 WL 3373416, *2 (S.D.N.Y. July 10, 2024) (citation omitted).

**ARGUMENT**

I.    **Petitioners Cannot Establish That The Application Meets the Statutory Requirements**

The R&R incorrectly concludes that Petitioners' Application was made "for use" in the St. Kitts and Nevis Proceedings.  R&R at 6.

Petitioners may not use a foreign proceeding as a pretext for obtaining discovery they intend on using in a U.S. proceeding.  "A United States court must be particularly cautious to insure that § 1782 is not being invoked as a subterfuge, to mask some extra-statutory purpose." *Jiangsu S.S. Co., Ltd. v. Success Super. Ltd.*, No. 14 CIV. 9997 CM, 2015 WL 3439220, at *5 (S.D.N.Y. Feb. 5, 2015); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) ("when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied").

Courts in this district have held that § 1782 applications are not "for use" in a foreign proceeding where a petitioner has expressly stated that he was seeking the discovery for a different proceeding.  For example, in *In re Postalis*, this Court held that the discovery sought did not meet the "for use" statutory requirement because petitioner had made public statements indicating that, although its briefing had requested discovery for several Brazilian actions, it actually intended to use the § 1782 discovery to aid it in a bringing of a proceeding in the United States.  *In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018).  In its briefing, petitioner Postalis asserted that it was seeking evidence against BNY Mellon subsidiaries for six-pending foreign proceedings.  *Id.* at *3.  However, Postalis's own public statements in Brazil admitted that the true purpose of its discovery application is for Postalis to obtain discovery that Postalis can use to plead a new action against BNY Mellon in the United States.  *Id.*  After analyzing Postalis' public statements, the Court determined that Postalis' representations that it

9

intended to use the discovery for the foreign proceeding were not credible (even if the requested evidence could have some use in the foreign proceeding) and found the application was an attempt to gain pre-litigation discovery for a prospective lawsuit in the United States. *Id*. at *4. The Court also looked at the scope of Postalis' discovery request and found that the scope of those requests further belied Postalis' representation because the subpoenas were not targeted towards the conduct of knowledge of the BNY Mellon subsidiaries, but rather the conduct and knowledge of BNY Mellon. *Id*.

Petitioner Philippe Martinez has made similar public statements that reveal his actual intended use for the evidence sought in this Application is for the RICO Action—not the St. Kitts and Nevis Proceedings. After receiving (unauthorized)[3] evidence from banks Petitioners subpoenaed in Florida, Petitioner Martinez made clear that his intention for obtaining that § 1782 discovery was to show that certain transactions passed through U.S. corresponding banks, in support of Petitioners' (at the time) forthcoming RICO Action. Specifically, in an April 19, 2024 interview, Petitioner Martinez called the Caribbean Galaxy Parties' filing of the St. Kitts and Nevis Proceedings defamation case as a "colossal mistake" because it allowed him to "subpoena bank transactions" through § 1782 discovery and "receive [information concerning] financial transactions in U.S. dollar[s]." Petitioner Martinez went on to explain why it was significant that the transactions were made in U.S. dollars, which has nothing to do with the St. Kitts and Nevis Proceedings. The significance was that the alleged improper transactions against the Caribbean Galaxy Parties were "sold in U.S. currency, in U.S. dollar . . . which means that if you do something that is illegal, you are touching the U.S. banking system." Petitioner Martinez noted that he

---

[3]    As described at p. 4, Petitioners served several banks with subpoenas, despite only having received authority to serve Bank of America in the Florida § 1782 Action.

"cannot wait to continue to receive this information and to file [his] case in U.S. federal court next month."

One month later, in May 2024, Petitioners used the information from their unauthorized subpoenas to support their baseless claims that a U.S. Court has personal jurisdiction over the Caribbean Galaxy Parties in the RICO Action. Petitioners allege in the complaint that the Caribbean Galaxy Parties are subject to jurisdiction because they were "[c]onducting business in the United States by executing corrupt CBI transactions in USD that were transferred through a U.S. intermediary bank, including Bank of America in Miami, Wells Fargo in Miami, BNY Mellon in Miami, and JP Morgan Chase in Miami." RICO Action, Doc. No. 1 ¶ 35. In June 2024, Petitioner reiterated that the Caribbean Galaxy Parties' filing of the St. Kitts and Nevis Proceedings was "the best thing that [Caribbean Galaxy and Dr. Harris] have ever done to me" and again called its filing a "strategic mistake" because it gave Petitioners access to "banking transactions" which should cause great concern concerning "money laundering to the U.S. banking system."

As was the case in *Postalis*, there is a demonstrable risk that Petitioners are seeking discovery in bad faith. Petitioners have not only threatened to use banking information received from § 1782 subpoenas for its RICO Action, but they have also followed through with that threat and cited such information in their complaint. Moreover, the risk that Petitioners will continue to misuse § 1782 discovery is not diminished now that Petitioners have filed a complaint. In fact, Petitioners have continued to represent that they will use banking information in the RICO Action, including in forthcoming amendments to their complaint. For example, after the Florida § 1782 Court granted Petitioners' request, to which the Caribbean Galaxy Parties objected, Mr. Martinez gloated that the order was "[a] tremendous victory [because] MSR won in US court last week [t]he right to subpoena the bank transaction related to CBI of [] Galaxy, Harris," including because the

11

potential defendants can no longer "pretend that the RICO case was over."  ECF No. 36 at 4.
According to Petitioner Martinez, "they're worried that I'm going to put them [the bank records]
in US federal court as evidence in the RICO case," which he confirmed "are giving a complete
new dimension to the RICO Action" including adding defendants and allegations concerning St.
Lucia.  *Id.*  Petitioners' intended use of § 1782 evidence to add new causes of action, new
defendants and "new dimensions" to the RICO Action—a domestic action—is definitively not a
permitted use of § 1782 discovery.  Section 1782 is not "designed to provide potential litigants
with information that will help them decide whether and where to commence proceedings."
*Jiangsu*, 2015 WL 3439220, at *15.

Like in *Postalis*, the Petitioners' requested discovery is not "for use" in the St. Kitts and
Nevis Proceedings and the request should be denied.  Petitioner Martinez has openly stated that he
has and will continue to use the evidence Petitioners receive from § 1782 discovery to show
contacts in the United States and conduct related to the United States banking system.  In short, he
will use it to attempt to bolster his personal jurisdiction arguments in the RICO Action, the basis
of which is currently the subject of a motion to dismiss.  RICO Action, ECF No. 117.  These types
of records are irrelevant to the St. Kitts and Nevis Proceedings, especially considering Petitioners
have access to actual transactions with the Caribbean Galaxy Parties and Dr. Harris through the
St. Kitts and Nevis Proceeding.[4]  Consequently, the only unique information available to
Petitioners here is whether those transactions transferred through an intermediary United States
bank; that evidence could only be useful to Petitioners in the U.S. RICO proceeding.  Further, the

---

[4]   The requested transactions have nothing to do with claims at issue in the St. Kitts and
Nevis proceeding because the passage of funds through intermediary accounts is irrelevant to the
Applicants' defamatory remarks, not least because it would be difficult (if not impossible) for the
Respondent Banks to know the purpose of each transfer.

fact that Petitioner Martinez has continued to tout that the information he has learned from the § 1782 discovery will only broaden the RICO Action continues to support that any reference to the St. Kitts and Nevis Proceedings is only a pretext.

Relying on *In re Accent Delight,* the Magistrate Court reasoned that so long as Petitioners are able to show a "*de minimis*" use or that the discovery "can be employed with some advantage to serve some use in the Foreign Proceeding," the statutory requirement of "for use" is met.  R&R at 6.  However, that interpretation is in tension with this Court's holding in *Postalis.*  In *Postalis*, the petitioner argued that "the fact that the discovery sought could be useful in filing a lawsuit against BNY Mellon in the United States does not also mean that the discovery cannot be used in the pending Brazilian proceedings."  *In re Postalis*, 2018 WL 6725406, at *4.  Notably, the Court rejected this argument, including by distinguishing *In re Accent Delight* as "ha[ving] less reason to be skeptical of the discovery applicant's assertion that the evidence was for use in a foreign proceeding."  *Id*. at *5.  *Postalis* further explained that "courts in this Circuit have instructed that, if the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation[, and s]eeking discovery under § 1782 for an improper purpose, namely for pre-litigation discovery otherwise not permitted under the Federal Rules of Civil Procedure, is bad faith just as a harassing application is in bad faith."  *Id*.

The Magistrate Court also inappropriately narrowed the scope of the case law cited by the Caribbean Galaxy Parties.  The Magistrate Court limited the application of *Postalis* and *Jiangsu* to "[a] *future* lawsuit, not an already pending lawsuit."  R&R at 9.  However, neither case makes such a distinction and cases relying on this line of caselaw have not interpreted these cases so

narrowly.  *See, e.g., In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP,* 24-MC-119 (LJL), 2024 WL 4169550, at *15 (S.D.N.Y. Sept. 12, 2024) ("When discovery is nominally for use in one proceeding but evidence suggests it is in fact for use in another proceeding for which it should not be granted under Section 1782, this can weigh against granting the petition.") (granting motion to quash subpoena that "appears designed primarily as a fishing expedition to acquire sensitive information for [an on-going proceeding] where its use is only speculative at this time."); *see also In re Yilport Holding A.S.*, No. CV 22-3028-ES-AME, 2023 WL 2140111, at *6 (D.N.J. Feb. 21, 2023) (granting motion to quash Section 1782 subpoena where applicant "failed to refute" that application was designed to "secure information meant for use in [an] anticipated Mississippi state action") ("In short, Yilport's tacit admission that its Subpoena serves a hybrid purpose, in aid of both foreign and domestic discovery, is troubling.").

## II.    The Intel Factors Weigh Against Granting The Application.

The R&R incorrectly concludes that the *Intel* factors weigh in favor of granting the Application.  The *Intel* "factors are not to be applied mechanically," and a court "should also take into account any other pertinent issues arising from the facts of the particular dispute."  *Kiobel*, 895 F.3d at 245.  Here, the balance of the factors weigh against granting discovery.  The *Intel* factors are either neutral (the second factor) or weigh against the application (the first, third and fourth factors).[5]

---

[5]    The first *Intel* factor considers whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264–265.  The second factor examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," and the third factor asks whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.*  Finally, the fourth factor looks to whether the requests are "unduly intrusive or burdensome." *Id.*

**A.      The First Intel Factor Weighs Against Granting the Application**

The first *Intel* factor considers whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. In applying the first *Intel* factor, courts in this Circuit have explained that the "relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application." *In re Klein*, 2023 WL 8827847, *10 (collecting cases); *see also, e.g., In re Microsoft Corp.*, 428 F. Supp. 2d at 194 (framing "[t]he relevant inquiry" as "whether the evidence is available to the foreign tribunal"). The Supreme Court has further explained that the "need for § 1782(a) aid generally is not as apparent" when the subpoena targets are parties to the foreign proceeding because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264.

The Magistrate Court acknowledges that "to the extent the subpoenas seek the bank records of Caribbean Galaxy Real Estate Corporation, Ying Jin, and Intervenor, they essentially seek discovery from their opponents in the St. Kitts and Nevis Proceedings." R&R at 11–12. However, the Magistrate Court did not give this finding sufficient weight in granting the Application. R&R at 12. This is in contrast to this Court's holding in *Klein*, when this Court found that the first *Intel* factor weighed against granting a § 1782 application because the petitioner was seeking to subpoena bank records of his adversaries in foreign proceedings. *In re Saul Klein*, No. 23 MISC. 211 (PAE), 2023 WL 8827847, at *10–11 (S.D.N.Y. Dec. 21, 2023). The Court reasoned that "[t]o the extent that the recipients of Saul's subpoenas (U.S. financial institutions) prove to have responsive materials—and as reviewed below, Saul has not mustered non-speculative evidence of this—such materials by definition will be financial records of the parties to the Brazilian civil proceedings (e.g., their bank statements). The respondents do not have any independent records

germane to the Brazilian courts." *Id*. at *11. That is the exact case here. Any material that could be relevant to the defamation claim—*i.e.*, whether the Caribbean Galaxy Parties or Dr. Harris were part of any scheme—will be in the possession of the parties and discoverable through the St. Kitts and Nevis Proceedings. Bank records as to any other parties are irrelevant to whether the Caribbean Galaxy Parties or Dr. Harris were part of any alleged scheme and have no use in the St. Kitts and Nevis Proceedings.[6] Accordingly, the first *Intel* factor weighs against granting the Petitioners' Application.

### B. The Second *Intel* Factor is Neutral

The second *Intel* factor examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel Corp.*, 542 U.S. at 264. The Magistrate Court found that "the second *Intel* factor favors granting the application" because "[n]either Caribbean Galaxy Parties nor Intervenor claim that the St. Kitts and Nevis High Court of Justice would be hostile to evidence obtained through the § 1782 discovery process," R&R at *13, but this finding is contrary to precedent from this District, in which courts regularly weigh the second *Intel* factor as "neutral" where "the district court has no evidence suggesting opposition from the foreign tribunal." *In re Alghanim*, 2022 WL 1423088, at *4 (S.D.N.Y. May 5, 2022); *In re DNG FZE*, No. 23 MISC. 435 (PAE), 2024 WL 124694, at *4 (S.D.N.Y. Jan. 11, 2024) (the second *Intel* factor "is neutral"); *In re Saul Klein*, No. 23 MISC. 211 (PAE), 2023 WL 8827847, at *11

---

[6] The Magistrate Court recommended modifying the subpoenas to only include discovery concerning Caribbean Galaxy Real Estate Corporation, Ying Jin, and Dr. Harris and the CBI Program. R&R at 17. The Magistrate Court rightly determined that discovery into any other parties would be overly broad and irrelevant to the St. Kitts and Nevis Proceedings. *Id*.

(S.D.N.Y. Dec. 21, 2023) ("The Court finds [the second *Intel*] factor neutral.").  Accordingly, the second *Intel* factor should be given neutral weight in evaluating Petitioners' Application.

### C.    The Third *Intel* Factor Weighs Against Granting The Application

The third *Intel* factor asks whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  The Magistrate Court found that the third *Intel* factor weighed in favor of granting the Application by rejecting the Caribbean Galaxy Parties' argument that Petitioners "seek to circumvent the Federal Rules of Civil Procedure by attempting to obtain discovery for the Florida RICO Action without first letting the RICO defendants test the sufficiency of the complaint via a motion to dismiss" because "nothing in the Federal Rules of Civil Procedure would bar the Applicants from seeking discovery while a motion to dismiss is pending."  R&R at *14.  However, that is not correct.  The Federal Rules of Civil Procedure prohibit discovery prior to a Rule 26 conference:  "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1).  *See also, Application of Royal Bank of Canada*, 33 F.R.D. 296 (S.D.N.Y. 1963) (plaintiff not permitted to engage in discovery procedures against a prospective witness where plaintiff had not brought a defendant within jurisdiction of the court by service of process.)  In the RICO Action, the parties are currently briefing the motion to dismiss, and a Rule 26 conference has not been scheduled.

The Magistrate Court also notes that it is "not required to address arguments raised for the first time in a reply brief" and is thus not required to consider this argument.  R&R at 14.  However, the Magistrate Court granted the Caribbean Galaxy Parties' letter request to supplement its opposition (ECF No. 31), which expressly requested permission to include arguments on how the

newly discovered statements of Petitioner Martinez "weigh[ed] heavily against *Intel* factors three and four."  ECF No. 25 at 3.[7]

Consistent with *Postalis*, this Court should find that the discovery sought is intended to circumvent the Federal Rules of Civil Procedure and therefore that the third *Intel* factor weighs against the Application.  *In re Postalis, 2018 WL 6725406*, at *5 ("Seeking discovery under § 1782 for an improper purpose, namely for pre-litigation discovery otherwise not permitted under the Federal Rules of Civil Procedure, is bad faith just as a harassing application is in bad faith.").  Even if this Court were to find that there was no evidence suggesting Petitioners' circumvention of proof-gathering restrictions, it should find, like other judges in this District, that the "third *Intel* factor is at this point neutral with respect to [the] Application."  *Matter of Application for an Or. Seeking Discovery Under 28 U.S.C. § 1782*, No. 24 MISC. 152 (GHW) (GS), 2024 WL 2883293, at *8 (S.D.N.Y. May 16, 2024), report and recommendation adopted sub nom. No. 1:24-MC-152-GHW, 2024 WL 2883091 (S.D.N.Y. June 5, 2024); *see also In re ALB-GOLD Teigwaren GmbH*, No. 19MC1166MKBST, 2019 WL 4140852, at *11 (E.D.N.Y. Aug. 30, 2019) ("With no record evidence that ALB-GOLD's application is "an attempt to circumvent foreign proof-gathering restrictions or other policies of" Switzerland or the United States, the third Intel factor is neutral or slightly favors ALB-GOLD.").

### D.    The Fourth *Intel* Factor Weighs Heavily Against The Application

Under the fourth *Intel* factor, "unduly intrusive or burdensome requests may be rejected or trimmed," *Intel*, 542 U.S. at 265, and courts must "apply[ ] the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015).

---

[7]  In addition, Petitioners have not argued that the Court should disregard this evidence or this basis.

"[W]hether a request is intrusive or burdensome should not be assessed based on the 'discovery scope' available in the foreign proceeding." *Id.* Rule 26(b)(1) provides that the scope of discovery is limited to "relevant" material that is "proportional to the needs of the case . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit." *In re Klein*, 2023 WL 8827847, at *12. "Proportionality and relevance are conjoined concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Id.* (formatting omitted). Considering these standards, the fourth *Intel* factor heavily weighs against discovery, and is an independent basis on which this Court may deny the Application.

The Magistrate Court correctly found that, as proposed, the subpoenas were overly broad and unduly burdensome. Specifically, the R&R appropriately determined that the requests involving "Relevant Parties" improperly included transactions that did not include claimants in the St. Kitts and Nevis Proceedings or the CBI program. R&R at 39 ("While evidence of transactions between these claimants and the other seven individuals named in the subpoenas would undoubtedly be relevant in proving a conspiracy to defraud, documents between just the other seven individuals that do not include the claimants in the foreign litigation are a step too far."). To address the overbroad nature of the subpoenas, the Magistrate Court recommended that the subpoenas be limited to documents "relating to the CBI program, Caribbean Galaxy Real Estate Corporation, Ying Jin, and Intervenor."

However, the Magistrate Court's proposed modification does not remedy the overbreadth of the subpoenas for three reasons. First, the subpoenaed banks are not in a position to determine which parties or transactions are related to the CBI program and will likely be forced to follow the guidance of the subpoenaing party. Consequently, the Magistrate Court has done little to narrow the subpoenas, which will necessarily result in the production of evidence unrelated to the St. Kitts

19

and Nevis Proceedings, as have the subpoenas issued in Florida § 1782 Action, which resulted in discovery into transactions related to St. Lucia. The subpoenas' overbreadth is further compounded by the fact that they are not limited to a time period that could arguably be relevant to the CBI Program. For example, the Magistrate Court granted discovery related to certain Caribbean Galaxy Parties from 2018 onward, despite the fact that no member of the Caribbean Galaxy Parties was designated as an AIO developer until 2021. Accordingly, discovery into transactions from the Caribbean Galaxy Parties between 2018 and 2021 cannot reasonably be relevant to the allegations in the St. Kitts and Nevis Proceedings.

Second, because the banking information of the claimants is available to Petitioners through the St. Kitts and Nevis Proceedings, the only information they could obtain from the subpoenaed banks that they otherwise would not have access to relates to whether any transaction, regardless of its relevance to the St. Kitts and Nevis Proceedings, passed through corresponding banks in the United States—information that can only be relevant to the establishment of U.S. jurisdiction for the RICO Action, and by definition cannot be relevant to the St. Kitts litigation, in which no issues are related to whether the funds flowed through the United States. *See, e.g.*, *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 16, 2015) (denying a § 1782 application because, *inter alia*, it sought overbroad discovery, and holding that applicants' "request for disclosure of every financial transaction these companies sweeps far too broadly to be proper for that limited purpose").

Third, the Magistrate Court failed to address *Klein's* guidance. Similar to this case, in *Klein*, this Court denied an applicant's request for § 1782 discovery of bank records where the applicant "was unable to identify a factual basis for seeking records from any of th[ose] entities." *Id*. The *Klein* Court described that request—which was substantively identical to Petitioners'

request here—as "an archetypal fishing expedition," and the Court explained that "[w]ere a broad-ranging subpoena propounded to a bank in ordinary domestic civil litigation with the proponent unable to articulate a non-speculative basis to believe that an entity relevant to the litigation had done business with the bank, the Court would be obliged to quash it, under Federal Rule of Civil Procedure 26." *Id.* (citing a collection of cases, including *In re Glitnir banki hf.*, 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. Aug. 19, 2011) (quashing subpoenas issued to financial institutions on the grounds of relevance and undue burden)).  That same reasoning applies here. Petitioners claim—without any support—that "on information and belief, this scheme included transactions in USD that were transferred to and from St. Kitts and Nevis, through correspondent accounts at the Respondent Banks, between at least January 1, 2018 and the present."  ECF No. 11 at 15–16.  Petitioners' putative "expert"—who is their own St. Kitts and Nevis counsel defending the defamation claim (ECF No 12, ¶ 2), and thus hardly an independent or neutral expert on St. Kitts and Nevis legal issues—provides a similarly conclusory assertion.[8]  He states only that "Applicants reasonably believe that at least some of the relevant transactions involved the Respondent Banks . . . [and that] Cross-border transactions in U.S. dollars ("USD") into and out of St. Kitts and Nevis necessarily require the use of a correspondent or intermediary U.S. bank that maintains relationships with the originating and beneficiary bank."  ECF No. 12, Kelsick Decl. ¶ 21D.  However, Petitioners' counsel fails to explain what that belief is based on or why the Respondent Banks have fulfilled that role.  Petitioners' speculation is not proper grounds for wide-ranging discovery, and Petitioners' failure to identify any valid basis for the expansive discovery

---

[8]    *See, e.g., Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003) ("because of his advocacy on behalf of plaintiffs as counsel and legal advisor, I do not believe that he can now testify with the detachment and independence that one would expect from an expert witness offering views as a professional"), aff'd, 99 F. App'x. 274 (2d Cir. 2004)."

they seek is fatal to their Application. *See In re Saul Klein*, 2023 WL 8827847, at *12–14 (denying § 1782 discovery and finding that *Intel* factor four weighed heavily against discovery where "there is no non-speculative basis for the subpoenas"). The Court in *Klein* expressly held that "the fourth factor weighs particularly heavily" because "there is no non-speculative basis for the subpoenas [.]" *Id.*

Accordingly, the fourth *Intel* factor weighs heavily against granting of the Application.

## III. In the Alternative, There is Good Cause To Enter a Protective Order Limiting Discovery "For Use" In the St. Kitts and Nevis Proceedings

The Magistrate Court's decision to deny a request for protective order because "[t]he Middle District of Florida is in the best position to determine whether or not to accept evidence obtained through this process" and because "the mere fact that the evidence may also be useful in the Florida RICO Action does not constitute an 'improper purpose'" is contrary to holdings from courts in this District.

Counter to the Magistrate Court's assertion, this Court, not the Middle District of Florida, is in the best position to determine whether a protective order is appropriate. The § 1782 court "is in the best position to quickly evaluate allegations of improper use of § 1782 and the meaning of any governing protective order." *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015); *see also Sampedro v. Silver Point Capital, L.P.*, 958 F.3d 140, 144 (2d Cir. 2020) ("We have further held that a district court may prevent the use of section 1782 discovery in foreign proceedings through a protective order. . . . For instance, confronted with the possibility that 'perversely incentivize[d] parties [would] . . . institute sham litigation as a cover to obtain [s]ection 1782 discovery,' we held that a party could present evidence to the district court that a section 1782 'applicant is attempting to use foreign litigation as a ruse for obtaining discovery for use in other

foreign proceedings,' so the district court could decide whether there was good cause for a protective order.").

Further, courts recognize that a protective order is appropriate in these circumstances, especially where there is risk of abuse. "If the petitioner credibly shows, however, that the applicant is attempting to use foreign litigation as a ruse for obtaining discovery' for use in other foreign proceedings, the court may enter a protective order prohibiting use of the discovery in other proceedings or even deny the Section 1782 application altogether." *Deposit Ins. Agency v. Leontiev*, No. 17-MC-00414-GBD-SN, 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018) (formatting omitted); *In re Telegraph Media*, No. 23-mc-215 (JGLC), 2023 WL 5770115, at *11 (S.D.N.Y. Sept. 6, 2023) ("If there is an identifiable and avoidable risk that evidence sought in a § 1782 application may be used for improper purposes, a district court may enter a protective order to limit its use."); *In re Arida, LLC*, 19-MC-522 (PKC), 2020 WL 7496355, at *7 (S.D.N.Y. Dec. 21, 2020) (same). Here, the Caribbean Galaxy Parties have identified a credible risk that discovery would effectively be granted in aid of a domestic proceeding, which is not permitted under § 1782. This Court can negate this risk by limiting the discovery to the St. Kitts and Nevis Proceedings.[9] Petitioner Martinez's statements have made clear that he is seeking discovery through § 1782 for an improper purpose, and that is to expand the dimension of the RICO Action.

This Court therefore has good cause to limit use of any discovery granted and should enter a protective order.

---

[9]    Several months ago, this Court concluded that where a party is looking into bringing a lawsuit in the United States and would use the discovery to craft the scope of that lawsuit, "a protective order is not an effective remedy for a [broad] discovery request" and instead, a full denial is appropriate. *In re Associacao dos Profissionais dos Correios,* No. 22-MC-132 (RA), 2024 WL 4299019, at *7 (S.D.N.Y. Sept. 25, 2024).

## CONCLUSION

For the foregoing reasons, the Caribbean Galaxy Parties respectfully request the Court grant its objections to the Magistrate Court's order and deny Applicants' request pursuant to § 1782. However, should the Court permit the requested discovery, the Caribbean Galaxy Parties respectfully request the Court enter a protective order preventing disclosure of confidential information outside of the St. Kitts and Nevis Proceedings.

DATED:  New York, New York            Respectfully submitted,
November 15, 2024

QUINN EMANUEL URQUHART & SULLIVAN LLP

By: */s/ Samuel G. Williamson*
      Samuel G. Williamson
      51 Madison Avenue, 22nd Floor
      New York, New York 10010
      (212) 849-7000
      samwilliamson@quinnemanuel.com

      *Attorney for the Caribbean Galaxy Parties*

24

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 15th day of November, 2024, a true and correct copy of the foregoing document was electronically transmitted to all counsel of record via the CM/ECF system.

By: ___*/s/ Samuel G. Williamson*___
Samuel G. Williamson
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
samwilliamson@quinnemanuel.com