UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF PHILIPPE MARTINEZ et al., <br><br>                Applicants, <br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | 24-MC-306 (RA) (SN) <br><br> ORDER ADOPTING REPORT AND RECOMMENDATION |

RONNIE ABRAMS, United States District Judge:

  Applicants Philippe Martinez and MSR Media SKN Ltd. filed an *ex parte* application for an order authorizing them to obtain discovery pursuant to 28 U.S.C. § 1782 from Standard Chartered Bank, New York Branch and The Bank of New York Mellon ("Respondents"), for use in proceedings in the High Court of Justice in the Federation of Saint Christopher and Nevis ("St. Kitts and Nevis"). Pending before the Court are the objections of the Caribbean Galaxy Real Estate Corporation, Galaxy Group, and Ying Jin (the "Caribbean Galaxy Parties") to Magistrate Judge Netburn's report and recommendation (the "Report"), which recommends that the application be granted with certain modifications. Report 18, Dkt. No. 39. Applicants oppose. *See* Opp'n, Dkt. No. 47. For the reasons set forth below, the Court adopts Judge Netburn's thorough and well-reasoned Report, grants the application with her suggested modifications, and denies the Caribbean Galaxy Parties' request for a protective order.

## BACKGROUND

  The Court assumes the parties' familiarity with the facts and procedural history of this action, which are detailed in Judge Netburn's Report, and recounts them only as necessary to this Court's analysis. Philippe Martinez is the founder of MSR Media SKN Ltd., which produces movies in St. Kitts and Nevis. Report 1. In exchange for their investments in the local film industry,

Martinez and his company received Citizenship by Investment ("CBI") units, the sale of which is subject to legally mandated minimum prices. *Id.*

In November 2023, Applicants published a letter accusing the Caribbean Galaxy Parties and former prime minister of St. Kitts and Nevis Timothy Harris ("Intervenor") of conspiring to manipulate the CBI program, asserting that the Caribbean Galaxy Parties sold CBI units below the legally-mandated price with the cooperation of the government, and alleging that Intervenor issued the Caribbean Galaxy Parties a high number of CBI units in exchange for a commitment to build a jail facility in the country. *Id.* at 2.[1] After two of the Caribbean Galaxy Parties and Intervenor filed defamation actions against Applicants in St. Kitts and Nevis (the "foreign proceedings"), Applicants initiated this § 1782 application to obtain financial records of the Caribbean Galaxy Parties, Intervenor, and other individuals from Respondents. *Id.* Applicants assert that "transactions furthering the corrupt scheme have passed through the Respondent Banks," Application, Dkt. No. 1 ¶ 5, and that records of these transactions will demonstrate the truth of their statements at issue in the defamation actions, Report 2. During the same period, Applicants and other plaintiffs commenced another action against the Caribbean Galaxy Parties, Intervenor, and other defendants in the Middle District of Florida for purported violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). *Id.*

On November 1, 2024, Judge Netburn issued her Report recommending that the Court grant the § 1782 application. The Caribbean Galaxy Parties timely filed objections to the Report,

---

[1] The Caribbean Galaxy Parties insist that they acted legally, claiming that, in 2021, "the Caribbean Galaxy Real Estate Corporation was chosen as a private developer under the [Alternative Investment Option] AIO program." Objs. 3, Dkt. No. 43. This program "allowed investors to invest in both privately-funded and privately-owned projects, as well as privately-funded and privately-owned projects." *Id.* The St. Kitts and Nevis government "granted 5,500 CBI units to Caribbean Galaxy in exchange for Caribbean Galaxy's commitment to build a public incarceration facility . . . in St. Kitts." *Id.* As a developer under the AIO program, "it was entitled to receive citizenship shares, which it could . . . sell to investors, who could then use them to obtain St. Kitts and Nevis passports through the AIO." *Id.*

2

which Applicants opposed. On December 17, 2024, Applicants submitted a supplemental letter, disclosing that the RICO action in the Middle District to Florida had been voluntarily dismissed. *See* Letter, Dkt. No. 48; *see also MSR Media SKN Ltd. v. Khan*, No. 8:24-CV-01248 (M.D. Fla. Dec. 12, 2024). In reply, the Caribbean Galaxy Parties emphasized that this dismissal was without prejudice and contended that it did not moot their objections to the pending application and Report. *See* Letter, Dkt. No. 49.

The Court thereafter scheduled oral argument; directed Applicants and the Caribbean Galaxy Parties to submit supplemental briefing to clarify issues specified by this Court; and, on consent of Applicants, Letter, Dkt. No. 51, ordered service on Respondents. *See* Order, Dkt. No. 50. Although the Court permitted Respondents an opportunity to file a letter or briefing, Respondents never appeared. Counsel for Applicants, the Caribbean Galaxy Parties, and Intervenor appeared for oral argument on August 5, 2025.

**LEGAL STANDARD**

**I.     Standard of Review**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). On a dispositive motion, a court may "adopt those portions of the recommendation to which no specific, written objection is made, as long as those sections are not clearly erroneous," *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (quoting Fed. R. Civ. P. 72(b)), but must review de novo those portions of a report to which a party has made specific objections, *see* 28 U.S.C. § 636(b)(1)(C); *Greene*, 956 F. Supp. at 513.[2] A court applies the clear error standard, however, "where when the objections are nonspecific or merely

---

[2] Unless otherwise indicated, quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

3

perfunctory responses . . . argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

As an initial matter, the parties dispute whether the Second Circuit's decision in *Associacao dos Profissionais dos Correios v. Bank of New York Mellon Corp.*, No. 22-2865, 2023 WL 3166357 (2d Cir. Mar. 28, 2023) (summary order), concluding that a magistrate judge's ruling on a § 1782 application was a nonfinal order over which it lacked jurisdiction, compels treatment of the Report as a dispositive ruling requiring de novo review of those portions of the Report to which parties object, *see* Objs. 1, or whether the appropriate standard of review remains unsettled, *see* Opp'n 5–6 (citing *In re Niedbalski*, No. 21-MC-747 (JGK), 2023 WL 4399003, at *1 (S.D.N.Y. July 7, 2023) ("The proper standard of review to be applied to orders granting Section 1782 applications is unsettled in this Circuit.")). Under either the de novo or clear error standard of review, however, the Court's conclusion is the same. Accordingly, the Court assumes that de novo review applies to those portions of the Report to which Caribbean Galaxy Parties have filed objections.

**II.    Applicable Law**

"A district court has authority to grant a § 1782 application where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015). "Once those statutory requirements are met, a district court may grant discovery under § 1782 in its discretion." *Id.* A court must, however, exercise its discretion "in light of the twin aims of the statute: providing

efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 297–98.

In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court set forth four discretionary factors that a court may consider if the § 1782 statutory requirements are met. The *Intel* factors are: "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome." *Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S. at 264–65).

## DISCUSSION

The Caribbean Galaxy Parties urge this Court to review the portions of the Report to which it objects de novo and deny the application because (1) Applicants are not seeking discovery "for use" in foreign proceedings, as § 1782 requires, and (2) the majority of the *Intel* factors weigh against granting Applicants' request. Objs. 1–2. For substantially the same reasons as those set forth in Judge Netburn's Report, the Court disagrees. The application is thus granted and the objections and request for a protective order are denied.

### I. The § 1782 Factors

#### A. The Presence Requirement

Neither Applicants nor the Caribbean Galaxy Parties dispute Judge Netburn's conclusion

5

that the first statutory factor is met.[3] Under the first factor, a court may authorize discovery pursuant to § 1782 where "the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made." *Mees*, 793 F.3d at 297. Because they are subject to personal jurisdiction in this district, Respondents are "found" in this district for purposes of § 1782. *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (holding that "§ 1782's resides or is found language extends to the limits of personal jurisdiction consistent with due process"). Having reviewed the Report's recommendation for clear error and finding none, the Court concludes that the presence requirement is satisfied.

### B. The Interested Person Requirement

The parties also do not object to the Report's conclusion that the third statutory factor is met. Section 1782 requires than an application be made "by a foreign or international tribunal or . . . any interested person." 28 U.S.C. § 1782(a). Because Applicants are defendants in the St. Kitts and Nevis proceedings, they constitute interested persons for purposes of § 1782. *See* Report 10–11. Accordingly, having reviewed this portion of the Report for clear error, the Court agrees with and adopts Judge Netburn's finding that the third statutory factor is satisfied.

### C. The "For Use" Requirement

The Caribbean Galaxy Parties principally dispute the Report's conclusion that the second "for use" statutory factor is met, contending that the requested discovery is not sought for use in the foreign proceedings, but rather for use in domestic litigation. Objs. 9. Applicants' dismissal of the Florida RICO action without prejudice, the Caribbean Galaxy Parties argue, "does not moot

---

[3] Intervenor contended before Judge Netburn that the presence requirement is not satisfied because this Court does not have jurisdiction over Standard Chartered Bank. *See* Intervenor's Opp'n 4–6, Dkt. No. 34. As the Report explains, however, the cases on which Intervenor principally relied "analyze *general* personal jurisdiction," whereas specific jurisdiction is all that is necessary in § 1782 applications. Report 5; *see also In re del Valle Ruiz*, 939 F.3d at 530 ("[W]here the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery [in a § 1782 action].").

6

the[ir] objections to the requested Section 1782 discovery," because this action may be brought again. Letter 1, Dkt. No. 49. Having reviewed the Report's conclusion on this factor de novo, the Court finds that Applicants have met the "for use" requirement.

To satisfy this requirement, the requested discovery must be "something that will be employed with some advantage or serve some use in the [foreign] proceeding[s]," but "need not be necessary for the party to prevail." *Mees*, 793 F.3d at 298. "[N]umerous courts in this district and beyond have described the for use prerequisite as imposing a *de minimis* burden on applicants." *In re Associacão dos Profissionais dos Correios*, No. No. 22-MC-132 (RA), 2024 WL 4299019, at *4 (S.D.N.Y. Sept. 25, 2024). An applicant's intention to use discovery sought pursuant to § 1782 in a U.S. proceeding is not, in itself, decisive of the court's analysis of the "for use" requirement. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) ("Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise."). In short, "that requested material may be for use in a U.S. proceeding . . . does not mean it is not also for use in the [foreign] proceeding." *In re Associacão dos Profissionais dos Correios*, 2024 WL 4299019, at *4.

Applicants' *de minimis* burden is readily met. As the Report concluded, Applicants have made a sufficient showing that the financial records they seek are relevant to their defense in the foreign defamation proceeding. *See* Report 6. They request, for instance, "transactions relating to accounts held by Relevant Parties at St. Kitts-Nevis-Anguilla National Bank Limited and transacted through" Respondents, as well as "documents and communications relating to the St. Kitts and Nevis CBI programs." Mem. in Supp. of Appl., Ex. B, at 11, Dkt. No. 11-1; *id.* at Ex. C, at 21. These documents bear upon whether Applicants' purportedly defamatory statements at issue

7

in the foreign proceedings were true or false. They have, therefore, made at least a *de minimis* showing that such documents could "be employed with some advantage" in the foreign proceedings. *Mees*, 793 F.3d at 298.[4]

Although the Caribbean Galaxy Parties have presented evidence of statements Martinez made that suggest his intent to use evidence obtained from this proceeding in a domestic action, whether a § 1782 application is a "pretext," Objs. 9, is a discretionary consideration better assessed under the third *Intel* factor. *See In re Accent Delight*, 869 F.3d at 135 (explaining that evidence of an applicant's intention to use a § 1782 proceeding as a "ruse" for obtaining discovery pertinent to a domestic proceeding "might support denying the Section 1782 application altogether" under *Intel*'s discretionary factors); *see also In re Associacão dos Profissionais dos Correios*, 2024 WL 4299019, at *5–*6 (concluding that the "for use" factor was met and analyzing evidence that application was a "ruse" under the third *Intel* factor). Accordingly, Applicants have satisfied the statutory factors and the Court proceeds to consider *Intel*'s discretionary factors.

## II.   The *Intel* Factors

The Caribbean Galaxy Parties object to the Report's conclusion that three of the four *Intel* factors favor granting the application, and assert that the Report did not give sufficient weight to the first *Intel* factor.[5] Objs. 14–15. Having reviewed the Report and the parties' arguments, the

---

[4] At oral argument, the Caribbean Galaxy Parties suggested, for the first time, that the discovery sought may not be able to be used in the foreign proceedings because the discovery period has closed. On further questioning, however, counsel qualified his assertion, stating that Applicants may be able to make an application for admission of such materials in the foreign proceedings. Although the Court welcomed supplemental letters on this matter, if indeed the requested discovery could not be used in the foreign proceedings, neither party submitted a letter to the Court following argument.

[5] For clarity, the Report concluded that the first factor weighed "slightly against granting the application," Report 13; the second and third factors favor granting the application, *id.* at 13–14; and, to the extent the fourth factor weighed "partially . . . against granting discovery," these "defects [could] be cured by narrowing the [proposed] subpoenas." Report 17.

8

Court agrees with Judge Netburn and Applicants that, on balance, the *Intel* factors favor granting the application.

### A.  Participation in Foreign Proceedings

The first *Intel* factor asks "whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent." *Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S. at 264). Irrespective of the nominal entity from whom discovery is sought, "when the real party from whom documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). That is because, in such circumstances, the "foreign tribunal . . . can itself order [the parties] to produce evidence." *Intel*, 542 U.S. at 264.

The first *Intel* factor weighs against granting the application, because the real entities from whom discovery is sought include participants in the foreign litigation. *See In re Saul Klein*, No. 23 Misc. 211 (PAE), 2023 WL 8827847, at *11 (S.D.N.Y. Dec. 21, 2023) (concluding that the first factor disfavored granting the application where the applicant only sought bank records of parties to the foreign proceedings); *see also* Report 12–13.  The Court is not persuaded, however, that the Report did not give this factor "sufficient weight," as the Caribbean Galaxy Parties contend. *See* Objs. 15.

The ability to obtain discovery in foreign proceedings is relevant to the § 1782 inquiry, but not dispositive, because the statute does not require exhaustion. Accordingly, Applicants were under no obligation to seek the requested discovery from the foreign court before, or after, filing their § 1782 application. *See Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 60 (2d Cir. 2024). Moreover, courts in this district have granted discovery of the financial records of banks that are

9

not parties to the foreign proceedings, even where the bank account holders are. *See, e.g.*, *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *6 (S.D.N.Y. July 12, 2018) (finding that the first factor favored granting the application where there was no evidence that the foreign tribunal could compel production of the relevant documents from the banks, the account holder "may not have the same records—or the same quality of records," and applicants had "reason to believe that [account holder]'s own production may not be entirely forthcoming"). The Court therefore finds that the first *Intel* factor weighs against granting the application, but is not dispositive.

### B. Nature of the Foreign Tribunal

The second *Intel* factor concerns "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. In assessing this factor, courts "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995).

The Caribbean Galaxy Parties object to the Report's conclusion that the second factor favors granting the application. It is undisputed that the foreign tribunal would not be hostile to U.S. judicial assistance in this action. *See* Report 13; *see also* Kelsick Decl. ¶¶ 25–27, Dkt. No. 12 (suggesting that the foreign tribunal is not only unopposed to judicial assistance from the United States, but is likely to accept it). The Caribbean Galaxy Parties argue that when a foreign tribunal is not hostile to U.S. judicial assistance, courts should consider the second factor to be neutral. *See* Objs. 16. Applicants disagree, insisting that "[n]either *Intel* nor any case in this Circuit says such a thing." Opp'n 17.

The Court finds that the second *Intel* factor favors granting the application, albeit only slightly. "[W]hen the district court has no evidence suggesting opposition from the foreign tribunal," courts in this district have considered "the second *Intel* prong [to be] neutral or slightly favoring the petitioner." *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520; *see also In re Alghanim*, No. 21-MC-00167 (LTS), 2022 WL 1423088, at *4 n.3 (S.D.N.Y. May 5, 2022) (same). This Court will do the same.

### C. Conceals Attempt to Circumvent Foreign Restrictions

The third factor asks whether the § 1782 application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Rejecting the Caribbean Galaxy Parties' argument that the "Applicants seek to circumvent the Federal Rules of Civil Procedure by attempting to obtain discovery for the Florida RICO Action," the Report concluded that the third *Intel* factor favors granting the application because "Applicants' request does not run afoul of either the Federal Rules of Civil Procedure or St. Kitts and Nevis law." Report 14. The Caribbean Galaxy Parties object, arguing that this issue was wrongly decided. Objs. 17–18. They further insist that the voluntary dismissal of the RICO action without prejudice "does not moot [their] objections" to the application. Letter 1, Dkt. No. 49.

Contrary to the Caribbean Galaxy Parties' assertion, the evidence does not demonstrate that Applicants are using the § 1782 application to circumvent foreign restrictions. While the discovery sought may well be relevant to past or future litigation against the Caribbean Galaxy Parties, that is not in itself demonstrative of bad faith. *See In re Tel. Media Grp. Ltd.*, No. 23-MC-215 (JGLC), 2023 WL 5770115, at *11 (S.D.N.Y. Sept. 6, 2023) ("That the English Court may

11

permit public filing of documents obtained pursuant to this application, and that Zweig may thereafter be able to use such material in the D.C. Action, does not demonstrate bad faith by Telegraph."); *In re Al-Attabi*, No. 21-MC-207 (VSB) (RWL), 2022 WL 229784, at *9 (S.D.N.Y. Jan. 26, 2022) ("[A] Section 1782 application should not be denied merely because the discovery material may have potential other uses by the petitioner.").

The Caribbean Galaxy Parties principally rely on *In re Postalis* and *In Re Associacão Dos Profissionais Dos Correios*, in which district courts denied § 1782 applications in light of public statements of applicants that "belie[d] [their] assertion[s] that the requested discovery [was] for use in a foreign proceeding." *In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018); *see also In re Associacão dos Profissionais dos Correios*, 2024 WL 4299019, at *6–*7. In so doing, they attempt to draw parallels with the instant case, highlighting Martinez's statement that the Caribbean Galaxy Parties had made a "colossal mistake" by suing him for defamation because § 1782 "allowed [him]—[his] company—to go to court in the United States and get a court order allowing [him] to subpoena bank transactions of these people." Objs. 4; *see also id.* at 10.

Notably, however, the *Postalis* and *Correios* applicants had initiated the foreign proceedings. *See In re Postalis*, 2018 WL 6725406, at *2; *In re Associacão Dos Profissionais Dos Correios*, 2024 WL 4299019, at *1. By contrast, here Applicants seek discovery to defend themselves against actions that the Caribbean Galaxy Parties and Intervenor commenced. While Applicants may indeed wish to use discovery obtained in this proceeding for use in domestic litigation, they must also defend themselves in the foreign proceedings and have made credible arguments that the discovery sought is pertinent to their defense. Accordingly, the Court does not find that the application "conceals an attempt to circumvent foreign proof-gathering restrictions or

other policies," *Intel*, 542 U.S. at 265, and instead concludes that the third *Intel* factor weighs in favor of granting the application.

### D. Overbroad or Burdensome

The fourth *Intel* factor asks whether the discovery sought is "overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Rule 26 permits parties to:

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). It further requires a court to "limit the frequency or extent of discovery" where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

The Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa S.A.*, 51 F.3d at 1101. "Thus, to the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery." *Mees*, 793 F.3d at 302.

The Report concluded that the proposed subpoenas are overbroad as to subject matter but appropriately tailored temporally, and reasoned that narrowing the scope of the subpoenas would

13

address these defects. Report 16–17. Although Applicants consent to Judge Netburn's proposed tailoring of the subpoenas, Letter 2, Dkt. No. 51, the Caribbean Galaxy Parties insist that narrowing the subpoenas will not remedy the subpoenas' overbreadth and that Applicants have not provided a non-speculative basis for their requested discovery, Objs. 15, 19–22. The Court disagrees.

It is true that the original subpoenas are overbroad as to subject matter because Applicants' original subpoenas sought financial transactions unrelated to the CBI program that is at the heart of the dispute in the foreign proceedings. *See* Report 16. But the Court is satisfied that tailoring the subpoenas to documents "relating to the CBI program, Caribbean Galaxy Real Estate Corporation, Ying Jin, and Intervenor," as recommended by Judge Netburn, Report 17, cures these defects.

The Caribbean Galaxy Parties urge that, even with this tailoring, the subpoenas are overbroad because Respondents "are not in a position to determine which parties or transactions are related to the CBI program and will likely be forced to follow the guidance of the subpoenaing party," and, as a result, the subpoenas "will necessarily result in the production of evidence unrelated to" the foreign proceedings. Objs. 19–20. Indeed, when asked at oral argument how they would propose tailing the subpoenas further, they responded that there is no narrowing that could address their overbreadth.

The Court, however, is persuaded by Applicants' representation that Respondents can identify responsive records using "data that is routinely included in electronic fund transfer records, including Originator to Beneficiary Information ('OBI'), originator or beneficiary identifiers, and addresses." Letter 2, Dkt. No. 51. While Applicants admit that "it can be difficult to be certain about which bank records relate to a particular issue," they assert this "is often the case with discovery requests for bank records" and "generally is not a reason for denying a § 1782

application." *Id.* The Court concludes that, as narrowed, the subpoenas permit discovery of evidence that is "relevant" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The Caribbean Galaxy Parties further argue that the proposed subpoenas, which request responsive documents between 2018 and present, are overbroad temporally. Because the purportedly defamatory statements in Applicants' 2023 letter accuse the Caribbean Galaxy Parties and Intervenor of fraud that began at least as early as 2018, the Court again disagrees.

Finally, the Caribbean Galaxy Parties claim that Applicants have not provided a non-speculative basis for their requested discovery. "[W]hile Rule 26(b)(1) provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount[s] to nothing more than a fishing expedition into actions or past wrongdoing not related to the alleged claims or defenses." *In re Novalpina Cap. Partners I GP S.À.R.L.*, No. 23 Misc. 25 (PGG), 2025 WL 1160854, at *8 (S.D.N.Y. Apr. 21, 2025). To satisfy this standard, Applicants must provide a "non-speculative basis" for their assertion that Respondents hold responsive records. *In re Saul Klein*, 2023 WL 8827847, at *14 (denying § 1782 application where applicant had not "come forward with a concrete basis for the assumption that . . . 12 banks held pertinent transaction records . . . as opposed to guessing that these 12 might"). They have done so.

In support of their application, Applicants submitted a declaration of Damian E. S. Kelsick, who previously served as High Court Judge in a "trial court[] of the same Eastern Caribbean judicial system" as the foreign proceedings. Kelsick Decl. ¶ 1. Judge Kelsick states that "[f]unds associated with CBI transactions are executed in U.S. dollars and . . . require the use of a correspondent or intermediary U.S. bank." *Id.* ¶ 21. In a supplemental letter, Applicants explain that documents obtained in prior § 1782 proceedings in the Southern District of Florida—which that court quashed without prejudice to renew—suggest that Respondents indeed hold responsive

records. *See* Letter 1–2, Dkt. No. 51 (representing that "Standard Chartered Bank produced financial records to Applicants in response to a subpoena substantially similar to the one at issue here" and that two other banks "produced responsive records showing that Bank of New York Mellon served as an originating or intermediary bank for numerous transactions involving the Caribbean Galaxy Parties' bank account(s) in St. Kitts and Nevis"). The Caribbean Galaxy Parties do not assert that Respondents lack responsive records, but rather that Applicants' response is insufficient because it is "uncorroborated" and this Court cannot "meaningfully evaluate whether, or to what extent, permitting their requested discovery would be fruitful." Letter 1, Dkt. No. 52.

The Court finds the materials submitted in support of the application, as well as Applicants' supplemental briefing, sufficient to demonstrate a non-speculative basis for their application. Unlike in *Klein*, where the applicant had provided no basis for discovery sought from twelve banks, Applicants have put forth a credible basis for seeking discovery from the two Respondent banks here.

Accordingly, the Court finds that, with the narrowing proposed by Judge Netburn, the fourth *Intel* factor weighs in favor of granting the application. Having concluded that the statutory factors are met, and having considered the *Intel* factors, the Court grants the § 1782 application with the more narrowly tailored subpoenas.

### III.   Protective Order

Finally, the Caribbean Galaxy Parties' seek a protective order, expressing concern that Applicants will use documents obtained as a result of subpoenas issued in this action in other domestic proceedings. That application is denied.

The Second Circuit has instructed that neither the Federal Rules of Evidence nor § 1782 "prevent[s] an applicant who lawfully has obtained discovery under the statute with respect to one

foreign proceeding from using the discovery elsewhere unless the district court orders otherwise." *In re Accent Delight*, 869 F.3d at 135. A court may enter a protective order "[i]f there is an identifiable and avoidable risk that evidence sought in a section 1782 application may be used for improper purposes." *In re Tel. Media*, 2023 WL 5770115, at *11. Litigants are advised to bring evidence that an applicant has "institute[d] sham litigation as a cover to obtain Section 1782 discovery," or that it is using it "as a ruse" to obtain discovery for other proceedings, to the district court's attention. *In re Accent Delight*, 869 F.3d at 135. "Should such evidence exist, it could provide good cause for entry of a protective order," or "denying the Section 1782 application altogether." *Id.* Section 1782 ultimately "entrusts to the district courts" determination of if and when entrance of such an order is appropriate. *Id.* at 134.

The Report recommends denying the request for a protective order, which was raised only in a footnote in its opposition to the application considered by Judge Netburn, reasoning that the potential application of discovery sought in the Florida RICO action did not establish a risk of "improper purpose." Report 18. The Report further reasoned that the district court in the RICO action was "in the best position to determine whether or not to accept evidence obtained through this process, should the Applicants attempt to offer it in those proceedings." *Id.* Since that time, the Florida action has been voluntarily dismissed without prejudice. The Court nonetheless agrees with the Report's recommendation that a protective order is not warranted.

The Court is not persuaded that Applicants are seeking the evidence in their § 1782 application for an improper purpose. As discussed *supra*, Applicants did not bring the foreign actions, making the argument that they initiated the foreign proceedings as a ruse to obtain § 1782 discovery unpersuasive. Furthermore, they have, to the contrary, persuasively argued that they are requesting discovery to defend themselves in those proceedings. The fact that Applicants have

17

previously expressed interest in using discovery obtained for use in other litigation neither undermines the relevance of the information to the foreign proceedings, nor—in light of the Second Circuit's approval of the practice—is it inherently improper. Accordingly, the Caribbean Galaxy Parties' request for a protective order is denied.

## CONCLUSION

For the reasons set forth above, the Court overrules the objections to the Report and grants the § 1782 application. Plaintiff shall submit a revised proposed order and subpoenas in accordance with this decision. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. No. 7.

SO ORDERED.

Dated:   September 2, 2025
         New York, New York

Ronnie Abrams
United States District Judge